# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:22-CR-0166-DGK-02 |
| CORY BROWN, | ) ) | |
| Defendant. | ) ) | |

## ORDER DENYING DEFENDANT'S OBJECTION

Now before the Court is Defendant Cory Brown's "Rule 59(a) Objection to the Magistrate's Order Disqualifying His Attorney of Choice, Sean Pickett." ECF No. 120. The magistrate's order disqualifying Mr. Pickett is ECF 102. Defendant argues Magistrate Judge Jill Morris erred in granting the Government's motion to disqualify Mr. Pickett, ECF No. 95, because: (1) the Government lacks standing to bring the motion; (2) the magistrate lacked authority to disqualify counsel for a non-same case conflict; and (3) there is no potential or actual conflict as to Mr. Pickett representing Defendant either at the suppression hearing or at trial, and that to the degree there are any conflicts, they have been waived. The objection is OVERRULED.

As a threshold matter, Defendant's arguments are waived as untimely because they could have been made—and should have been made—before the magistrate entered her order. Granted, the magistrate ordered expedited briefing on the motion due to the nearness of the suppression hearing and the approaching trial date.[1] But Defendant did not object to the expedited briefing schedule, request an extension of time, or seek to file a brief after the hearing on the motion. Thus, Defendant has no legitimate excuse or justification for waiting to file a

---

[1] The Court also notes Defendant's attorneys prior to Mr. Pickett also had conflict issues and withdrew.

brief until *after* the magistrate reached a decision and issued her ruling. The practical effect of Defendant's waiting to file his brief until after the magistrate rendered her decision was to complicate an issue already fertile for appellate review. *See Wheat v. United States*, 486 U.S. 153, 161 (1988).[2]

Assuming Defendant's arguments have not been waived, after careful review of the entire record, the Court rejects them on the merits.

Defendant's first two arguments are unavailing. Whether the Government had standing to raise the issue, or whether Rule 44(c) gives a magistrate authority to disqualify counsel for a non-same case conflict, is irrelevant. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. at 160. Once a trial court has been "alerted to possible conflicts of interest," it "must take adequate steps to ascertain" whether separate counsel is warranted. *Id*. Granted, *Wheat* concerned a case involving joint representation of clients in the same case. But its reasoning and the concerns raised—such as a court's interest in preventing situations where an attorney must choose between a course favorable to one client but unfavorable to another—are applicable here. For example, if not disqualified, Mr. Pickett would have to choose between arguing that a former client of his was responsible for the gun Defendant is charged with possessing, or, swallowing his tongue and not making this argument at all, which would be to Defendant's detriment.

Defendant's third argument fares no better. The Court agrees and accepts the magistrate's determination that there are actual and potential conflicts here. Although the

---

[2] In *Wheat*, the Supreme court noted that trial courts confronted with multiple representations face the prospect of being "whip-sawed" by assertions of error no matter which way they rule. If the court agrees to the representation and the defendant is convicted, the defendant can claim on appeal that he did not receive effective assistance of counsel, even if all the clients involved agreed to waive any conflicts. On the other hand, if the court refuses to accede to the representation, the defendant may argue on appeal that he was denied his counsel of choice.

magistrate did not make explicit credibility determinations concerning Mr. Pickett's testimony, she plainly did not believe that Mr. Pickett never discussed Mr. Brown with the Government in his proffer discussions concerning Individuals One, Two, or Three. *See, e.g.*, Disqualification Order at 8 ("Even though Attorney Pickett claims he was not representing Individual 1, the Court finds that his conduct indicates otherwise . . . ."). In any event, based on the record before it, the Court does not find Mr. Pickett's assertions on these points entirely credible.[3] The Court's conclusion is bolstered by the undisputed fact that in his discussion with Magistrate Judge Gaddy and Assistant U.S. Attorney Ragner about client conflicts involved in this and another case, Mr. Pickett conceded that he should withdraw from both cases, including this one, and he agreed to do so.

Finally, Defendant's claim that the waivers he has produced here can cure any conflicts is unpersuasive. Assuming for the sake of argument that the Court should accept the conflict-of-interest waivers from Defendant and Individuals Two and Three—a big assumption—no such waiver has been produced for Individual One,[4] and an actual conflict exists between Defendant and Individual One.

---

[3] To be clear, the Court is not suggesting Mr. Pickett is being untruthful. It is quite possible Mr. Pickett did not have extensive discussions with these clients about Defendant, or that he does not remember the extent of his discussions with his other clients about Defendant. Mr. Pickett does not appear to have clear memories about these discussions. Indeed, much of his hearing testimony was based on how conversations with the Government about a client's potential proffer *typically* went. He did not testify that he has a clear and definite memory of all of his conversations with the Government concerning Individuals One, Two and Three, and that Defendant's name was never mentioned. He testified about how proffer discussions usually went, and that typically discussions about specific individuals usually did not occur until much later in the process. *See, e.g.*, Tr. at 16 (indicating that he did not "typically have that information prior to any [formal] proffers . . . Typically, the way the Government would [handle preliminary discussions]—they don't tell you necessarily who they want to talk about. They tell you maybe a thing they want to talk about or they tell you that they want the defendant to be assessed as to his credibility, and they'll talk about all kinds of different things.").

[4] Although Individual One has been murdered, Mr. Pickett still owes him a duty of confidentiality and a duty of loyalty since the attorney-client privilege survives his death. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

3

For the foregoing reasons, Defendant's objection to the magistrate's order disqualifying Mr. Pickett is OVERRULED.

**IT IS SO ORDERED.**

Date:  March 8, 2023  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT