IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>vs.<br><br>CORY T. BROWN,<br>　　　Defendant. | Case No. 4:22-cr-00166-DGK-2 |

### DEFENDANT'S RESPONSE TO
### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Cory Brown responds to the Government's sentencing memorandum.

In its weeks-late memorandum,[1] the Government asks this Court to sentence Mr. Brown to 120 months in prison, the maximum possible sentence, as an upward departure from the 78-to-97-month Guidelines range the Presentence Investigation Report ("PSR") identifies (Doc. 231 at 17). The Government's defense of the PSR's suggested range, which does not address any of the arguments in Mr. Brown's sentencing memorandum, is without merit. And the Government's drastic upward departure request lacks any reasonable basis in the facts of this case or applicable sentencing law. This Court should deny the Government's requests and sentence Mr. Brown as he requested in his own memorandum.

---

[1] Mr. Brown moved the Court to strike the Government's sentencing memorandum because it was filed two weeks out of time without leave, and less than 48 hours before the originally scheduled sentencing hearing in this case (Doc. 237). The Court denied the motion to strike as "moot." That was error. The Government's memorandum was still grossly out of time, and no leave to file it out of time for "excusable neglect" was requested, proven, or given under Fed. R. Crim. P. 45(b)(1)(B). Mr. Brown asks for equal treatment with the Government. Doubtless the Court would not have given him the same courtesy if he had not filed his memorandum until 48 hours before the sentencing hearing. Mr. Brown renews his motion to strike the Government's memorandum as out of time, which is not "moot."

**A. The § 2K2.1(b)(1)(A) enhancement for constructive possession of three to seven firearms does not apply because the Government failed to prove Mr. Brown had dominion over the home in which the firearms were found, and no evidence suggests he ever exercised control over those firearms.**

In his sentencing memorandum (Doc. 235), Mr. Brown explained the two-level Guidelines enhancement in § 2K2.1(b)(1)(A) that the PSR recommended for possession of three to seven firearms does not apply. This is because no evidence of any kind showed Mr. Brown possessed any of the firearms found in the Quail Creek Drive home, so nothing proved he had "dominion over the premises where the firearm is located, or … knowledge and control of the firearm itself." *United States v. Banks*, 43 F.4th 912, 919 (8th Cir. 2022) (quoting *United States v. Fisher*, 965 F.3d 625, 630 (8th Cir. 2020)).

In response, and citing no authority, the Government argues the evidence at trial sufficiently showed Mr. Brown's constructive possession of other firearms in the Quail Creek Drive home. It lays out the evidence contained in the PSR tracing Mr. Brown's movements in the hours leading up to his October 14, 2021, arrest (Doc. 236 at 3-5). It argues that his "presence inside the apartment, the circumstances for which he returned to Kansas City, the communications he had on his phones before and during his time in Kansas City, the open-concept layout of [the] Quail Creek Drive [home], and the sheer number of firearms in plain view make it obvious the defendant knew the other firearms were present and could have easily asserted control over them" (Doc. 236 at 5-6). The Government is wrong.

At the outset, the Government does not appear to suggest that Mr. Brown in any way exercised "dominion over" the Quail Creek Drive home "where the firearm[s]" were located. *Banks*, 43 F.4th at 919. But to the extent it does, it is wrong. It points to no evidence that Mr. Brown was an owner or had any property interest in the home. At most, all evidence it cites points to Mr. Brown being a

guest in the Quail Creek Drive home. This is insufficient to establish his "dominion over the premises." *See United States v. Williams*, 731 F. App'x 268, 270 (5th Cir. 2018) (holding a defendant was not in constructive possession of a firearm found in an apartment he visited but did not live in or lease).

Instead, the Government's focus appears to be on the second method of proving constructive possession: that Mr. Brown allegedly had "knowledge *and* control over" firearms in the Quail Creek Drive home's kitchen. *Banks*, 43 F.4th at 919 (emphasis added). But none of the evidence it relies on sufficiently establishes that Mr. Brown *ever* exercised control over any of the other firearms in that kitchen – trace amounts of his DNA were only found on *one* firearm, and the jury convicted him of possessing it.

The Government fails to explain how its evidence at trial placing Mr. Brown inside the Quail Creek Drive home establishes any degree of control over firearms located inside it. It argues the home's "open-concept layout" and "the sheer number of firearms in plain view make it obvious" that Mr. Brown "*could* have easily asserted control over them" (Doc. 236 at 6). But as the Eighth Circuit held in *Banks*, conjecture is insufficient, as the Government must prove Mr. Brown exercised control over the firearms, not just that he *may* have.

The Court should deny the Government's request to attribute control over the firearms to Mr. Brown absent any evidence was ever even in the same room with them, let alone actually controlled them.

### B. The § 2K2.1(b)(6)(B) enhancement for possessing drugs with intent to distribute them in connection with the firearm at issue does not apply because no evidence connects marijuana found in the Quail Creek Drive home to a gun with trace amounts of Mr. Brown's DNA, and another person already has been convicted of possessing the same drugs with the intent to distribute them.

Next, the Government argues the Court should apply § 2K2.1(b)(6)(B) "for possession of the charged Glock firearm in connection with possession with intent to distribute marijuana" (Doc. 236 at 6). It asserts this enhancement is mandatory because the firearm Mr. Brown was convicted of possessing "involves drug trafficking rather than simple possession" (Doc. 236 at 6) (quoting *United States v. Murray*, 909 F.3d 987, 989 (8th Cir. 2018)). The Government is wrong here, too. No evidence showed Mr. Brown ever possessed the marijuana in question, a crime for which his co-defendant was the only one charged.

The Government argues "the evidence shows the marijuana was found on the counter [near the charged firearm] with a digital scale, plastic bags, and rubber bands – all items consistent with the distribution of marijuana," that "[t]here was also evidence of marijuana found in the Mercedes," and that Mr. Brown "possessed over $16,000 in cash" (Doc. 236 at 6). It asserts this evidence sufficiently proves not just that Mr. Brown possessed marijuana, but that he did so with an intent to distribute the marijuana (Doc. 236 at 6-7).

Mr. Brown already explained in his sentencing memorandum why this is wrong (Doc. 235 at 7-8). He explained that the mere fact the firearm was found near drugs itself is insufficient to apply this enhancement (Doc. 235 at 8) (citing *United States v. Mansfield*, 560 F.3d 885, 887-88 (8th Cir. 2009); *United States v. West*, 643 F.3d 102, 116 (3d Cir. 2011); *United States v. Pimpton*, 589 F. App'x 692, 696-97 (5th Cir. 2014)). It does not matter whether the offense at issue was for an enhanced form of possession such as "with intent to distribute." The Government still had to prove the drugs were *in connection with* the firearm possession at issue.

The Government does not address any of the authorities Mr. Brown cited. Instead, its argument repeats the errors of its earlier constructive possession point. The marijuana itself was in the kitchen near the majority of the firearms the Government argues Mr. Brown constructively possessed. But like those firearms, the Government offers no evidence linking Mr. Brown to the marijuana. Instead, it relies on the marijuana's proximity to a single gun containing trace amounts of DNA from Mr. Brown and three other individuals (PSR at 8). This is insufficient, particularly when it charged someone else with possessing that marijuana in the first place.

As the PSR explains, Mr. Brown was one of four individuals arrested near the Quail Creek Drive home (PSR at 4). One of the other men was Mr. Brown's co-defendant, Mr. McMillan. The Government *only* charged Mr. McMillian – the Quail Creek Drive home's only listed resident (PSR at 6) – with possessing the marijuana found in the home, a crime to which he pleaded guilty. Now, it reverses course and attributes possession of the same drugs to Mr. Brown because he allegedly was present in the home.

The only evidence connecting Mr. Brown to the firearm to begin with is trace amounts of his DNA found on it along with three other individuals' DNA. Mr. Brown did not live at the Quail Creek Drive home, no evidence ever placed him in the same room as the marijuana, and the Government charged another person with possessing it.

The Court should deny the Government's request to apply § 2K2.1(b)(6)(B)'s enhancement. As in all the authorities Mr. Brown cited but the Government does not address, the Government has failed to prove Mr. Brown possessed a firearm in connection with drug trafficking or possession.

### C. The Court should not consider conduct for which Mr. Brown was acquitted in a previous case to enhance his sentence in this case.

Next, the Government argues the Court should consider Mr. Brown's alleged conduct charged in *United States v. Brown*, No. 4:19-cr-00315-DGK-8 ("*Brown I*") when sentencing him in this case notwithstanding his acquittal by jury. But as Mr. Brown explained in his sentencing memorandum, the constitutionality of enhancing a defendant's sentence based on conduct for which a jury acquitted him is dubious at best (Doc. 235 at 3-5).

The Government does not respond to any of the arguments Mr. Brown makes or the numerous decisions he cites criticizing the use of acquitted conduct during sentencing. Instead, it urges this Court to reconsider the same evidence the jury in *Brown I* found insufficient to warrant a conviction and enhance Mr. Brown's sentence merely because this Court presided over that trial and heard the same evidence as the jury (Doc. 236 at 8). The Court should deny the Government's request.

"An acquittal is accorded special weight." *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). It "represents the community's collective judgment regarding all the evidence and arguments presented to" the jury and so "its finality is unassailable." *Yeager v. United States*, 557 U.S. 110, 122-23 (2009). "Consistent with this, juries were historically able to use acquittals in various ways to limit the State's authority to punish, an ability that the Founders prized." *McClinton v. United States*, 143 S.Ct. 2400, 2401 (2023) (Sotomayor, J., respecting the denial of certiorari) (citing *Jones v. United States*, 526 U.S. 227, 245-46 (1999)).

The Government asks this Court to invade the province of the *Brown I* jury, but provides no compelling reason to do so. As Mr. Brown explained in his sentencing memorandum, four Justices of the Supreme Court have signaled their concern that acquitted-conduct enhancement is unconstitutional (Doc. 235 at 4).

Those four members, enough to grant certiorari, put off consideration of the question until the Sentencing Commission could consider an amendment to the guidelines barring such enhancements (Doc. 235 at 5).  As Mr. Brown showed in his memorandum, the Sentencing Commission now has declined to do so.  This alone is reason enough for this Court to refuse to consider the *Brown I* charges, and the Government does not explain any rationale otherwise.

As in the decisions Mr. Brown cited in his sentencing memorandum, the Court should recognize that an acquitted-conduct enhancement to Mr. Brown's Guidelines range would be unconstitutional.

**D. Under 18 U.S.C. § 3553, Mr. Brown's prior alleged criminal conduct, most of it uncharged or dismissed before conviction, does not warrant a substantial upward variance to the statutory maximum penalty.**

Finally, the Government asks the Court to depart upward from even the PSR's Guidelines range that Mr. Brown criticizes, and instead sentence Mr. Brown to 120 months imprisonment, the maximum possible sentence (Doc. 235 at 9-13). But it provides no compelling reason to do so, instead merely reciting allegations from the PSR and conclusorily stating the statutory maximum is warranted.

The Government is wrong.  The Court should adopt Mr. Brown's guidelines calculations and sentence him to 37 months in prison.

District Courts must consider "the kinds of sentence and the sentencing range established" in the Sentencing Guidelines.  18 U.S.C. § 3553(a)(4).  A departure from the Guidelines is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline[s]." *Koon v. United States*, 518 U.S. 81, 98 (1996).  A "presumption of substantive reasonableness" only applies to sentences "within the guidelines range." *United States v. Farmer*, 647 F.3d 1175, 1178 (8th Cir. 2011).  "[T]he Guidelines remain 'the starting point and the initial

7
Case 4:22-cr-00166-DGK   Document 239   Filed 11/29/23   Page 7 of 10

benchmark' in" determining a sentence. *United States v. Azure*, 536 F.3d 922, 930 (8th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).

In *Azure*, a district court sentenced a defendant to 180 months in prison, a "substantial upward variance from the [guidelines] range" of 37 to 46 months. *Id.* at 928-29. The district court justified its departure by pointing to the defendant's "past long and detailed history of violence, including the use of dangerous weapons, knives, forks, and other things, biting people." *Id.* at 932. The Eighth Circuit found this prior conduct alone was not sufficient to justify the upward departure, vacated the sentence, and remanded for resentencing. *Id.* at 932, 934.

The PSR and the Government both note Mr. Brown's 2013 arrest and subsequent conviction of the unlawful use of a weapon, § 571.030.1, R.S.Mo. (2013), to which the Government points as evidence of Mr. Brown's criminal history warranting an above-guidelines sentence (PSR at 10-11; Doc. 236 at 11).

But as Mr. Brown explained in his sentencing memorandum, Missouri's legislature repealed that offense in 2017, making Mr. Brown's conduct in that case no longer a crime today – and in fact a fundamental right (Doc. 235 at 10-12).

The Government ignores this entirely. Missouri's repeal of this offense less than four years after Mr. Brown's 2013 arrest means this Court should lower Mr. Brown's criminal history score, not sentence him to the statutory maximum. *See United States v. Harris*, 890 F.3d 480, 487 (4th Cir. 2018) (approving a district court's downward departure because one of the defendant's prior offenses no longer was a crime). Mr. Brown explained this in his sentencing memorandum, but the Government does not address it at all.

The Government also argues Mr. Brown's 2014 arrest and subsequent conviction for the Missouri Class D felony of resisting arrest, § 575.150, R.S.Mo., warrants the ten-year statutory maximum in this case (Doc. 236 at 11). But it does not even attempt to explain why this nine-year-old conduct merits a ten-year

sentence now. That conduct does not merit this in any way. In 2014, that offense carried a four-year statutory maximum in Missouri, § 558.011.1(4), R.S.Mo. (2014), and Mr. Brown was only sentenced to three years (PSR at 10). Punishing this years-old conduct three times as harshly now would be substantively unreasonable.

The Government also largely relies on other alleged criminal conduct or minor supervision violations (Doc. 235 at 11-12; PSR at 11, 13-15). Like its arguments regarding Mr. Brown's actual convictions, it fails to explain why any of that alleged conducted warrants the statutory maximum here. It points to three incidents in 2009, 2016, and 2018 in which Mr. Brown was alleged to have fled from law enforcement. But Mr. Brown was never charged for any incident in 2009 and both prosecutions against him for the 2016 and 2018 alleged conduct were dismissed (PSR at 13-15). Mr. Brown denies having done any of that and has never been afforded the opportunity to contest those allegations.

Being sentenced to ten years in prison based on allegations of non-violent offenses for which Mr. Brown was never charged, or which charges were dismissed, would not only be unfair and un-American, but downright Kafkaesque. This Court should not even countenance sentencing Mr. Brown well above even the PSR's guideline calculation based on this uncharged or unprosecuted alleged non-violent, let alone convicted.

"Failing to adequately explain an upward departure is a significant procedural error …." *Azure*, 536 F.3d at 932. The Government's sentencing memorandum fails to adequately explain why any of Mr. Brown's prior alleged conduct warrants the statutory maximum in this case. As in *Azure*, the Government does not "attempt to assign hypothetical criminal history points to the conduct that did not result in convictions, and then determine what the appropriate criminal history category would be." *Id.* Instead, it regurgitates large portions of the PSR, much of which concerned conduct not even ever charged, and to which Mr.

Brown objected, and simply labels the alleged conduct "a pattern of flight from law enforcement, firearm possession, and deceptive behavior" warranting a statutory maximum sentence (Doc. 236 at 10).

The Government's broad strokes were insufficient to warrant a substantial upward departure in *Azure*, and they are insufficient here. Even if the Court disagrees with Mr. Brown's own Guidelines calculation from his sentencing memorandum, it should decline to depart upward from the Guidelines as calculated in the PSR as the Government requests.

## Conclusion

For all the reasons Mr. Brown described in his sentencing memorandum and here, the Court should sentence him to 37 months in the custody of the Bureau of Prisons. It should deny the Government's requests otherwise.

Respectfully submitted,

*Jonathan Sternberg, Attorney, P.C.*

by /s/Jonathan Sternberg
Jonathan Sternberg, Mo. #59533
Brody Sabor, Mo. #73421
2323 Grand Boulevard #1100
Kansas City, Missouri 64108
Telephone: (816) 292-7020
Facsimile: (816) 292-7050
jonathan@sternberg-law.com
brody@sternberg-law.com

COUNSEL FOR DEFENDANT
CORY T. BROWN

Certificate of Service

I certify that on November 29, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of that filing to all parties.

/s/Jonathan Sternberg
Attorney